**RECEIVED**

DEC 11 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS DIVISION**

**OLIVIA L BAYS**
**Plaintiff**

v.

## SA23CA1519 FB

**Sheriff Arnold Zwicke**
**GUADALUPE COUNTY SHERIFF, TEXAS,**
**Defendant**

**CIVIL ACTION NO:**

**Jury Requested**

**PLAINTIFFS' ORIGINAL COMPLAINT**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

**PRELIMINARY STATEMENT**

On November 10, 2021, the plaintiff's vehicle was stopped unlawfully by the New Braunfels Police Department. Body camera footage will show that this department targeted the plaintiff maliciously for filing complaints against their officers. This agency had targeted the plaintiff specifically and made the false claim that they had a valid reason to stop her vehicle. There is evidence to show that the New Braunfels police officer, Joel Hawk, did so knowingly and intentionally stop the plaintiffs vehicle maliciously, without probable, infraction, nor reasonable cause to stop the vehicle. The plaintiff was transported to the Guadalupe County Jail.

## I. SUMMARY OF THE COMPLAINT

1. The Guadalupe County Jail is plastered with a history of men and women whose lives are compromised by the actions and the deliberate indifference of the detention officers and staff who are tasked with the duty to protect them. A place that was meant for temporary confinement for individuals not convicted of a crime has become a place of torment and punishment.

2. The Guadalupe County Sheriff as the policymaker for the Jail has created a pervasive pattern and culture of injury and even documented deaths that have caused injury and has even taken the  lives of pre-trial detainees. This pattern does not end with simply those who lost their lives but extends to each of those individuals who have suffered needless and numerous beatings, lack of medical attention, and whose cries for help were silenced by their captors. It is time for justice to wield her mighty hand and hold Guadalupe County accountable for their deliberate indifference to basic human rights. These individuals deserve humanity, and they deserve life.

3. For a documented pattern over a number of years, the Guadalupe County and its policy-maker Sheriff  Arnold S. Zwicke have been objectively and subjectively aware of the deplorable conditions that face the pretrial detainees trusted to their care.

During this time frame, Guadalupe County has become a place of punishment prior to conviction and a death sentence for many who walk in its doors especially those who suffer from mental and physical disabilities. Guadalupe County and Sheriff Zwicke cannot claim ignorance as they have been deliberately indifferent and encouraged the ongoing policies, customs, and practices that they know cause constitutional, statutory, and common law violations to the pretrial detainees within the walls of the Guadalupe County Jail and its associated annexes. Their indifference is compounded by the fact that despite their awareness of these ongoing violations they have failed to implement corrective or remedial customs or policies as these same injuries continue at an alarming rate.

4. Guadalupe County Jail's checkered history goes back almost a quarter of a century when in the late 1990s and early 2000s, the community called for change in the Jail as many detainees were suffering the same constitutional violations that face present-day detainees.

5. There is no amount of money that will change, or reverse the injuries that the plaintive has sustained from the abuse and torture that she sustained as a resident at the Guadalupe county jai. The plaintiffs hope is that this lawsuit will create and promote change to make the Guadalupe County to wake up and begin the long process of fixing the cesspool these policymakers created.

6. Plaintiff brings this civil rights lawsuit on behalf of herself to remedy the violation of their rights secured by the United States and Texas Constitutions.

**Parties**

1. Plaintiff: Olivia Bays

2. Defendant Guadalupe County is the government entity responsible for the County Sheriff's Office which is in turn responsible for the Guadalupe County Jail where each of the Plaintiff suffered and sustain her injuries. Guadalupe County is located in the western District of Texas.

## JURISDICTION AND VENUE

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 because Plaintiff is suing for relief under 42 U.S.C. § 1983; 42 U.S.C. § 12131 et. seq.; and 29 U.S.C. § 794.

Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391 because Defendant is located in the Western District of Texas, and all or a substantial part of the causes of action accrued in the Western District of Texas.

## FACTS OF THE CASE

1. Upon arrival, the plaintiff not patted down processed, or searched by a female officer. There were two male officers working at the facility at the time of the plaintiff's arrival. The Guadalupe County adult detention center staff knowingly, and intentionally violated PREA standards by conducting an invasive search of the plaintiffs person and body. Using groping motions around her and about her body. This Immediately began the pattern of abuse. Inhumane treatment, civil rights and constitutional right violations.

2. For over 48 hours. Plaintiff was held in a cell within the book in area. The plaintiff can attest to the fact that the conditions within this area are beyond inhumane. Previous inmates can and will confirm to these inhumane conditions as cruel and unusual punishment.

3. Anywhere from 48 to 72 hours, those being processed are held, often times without phone calls, without being given access to their attorney, proper clothing, and medical treatment. This particular area is deliberately kept at a temperature that is so excessively low, that many inmates lose feeling of body parts, shivering, losing the inability to rest and having to huddle together with strangers in order to maintain some warmth. The plaintiff and others detainees had limbs that had turned purple because of the freezing conditions.

4. Plaintiff experienced symptoms of illness upon being moved, which included fever, sore throat and cough. Staff refused toprovide proper clothing, increase the temperature to a humane level when being repeatedly asked, nor did they provide reasonable accommodation to those with special needs in accordance to the Americans with disabilities act.

5. The jail staff unlawfully maintained the plaintiff within this area beyond a 48 hour period. When residents complained about the conditions, the staff would deliberately lower the temperatures, they had removed residents from the cell, forcing them to take cold showers, then returning us to the freezing conditions.

6. Within this 48 to 72 hour period of unlawful detainment, the plaintiff was provided with meals that were expired. Plaintiff was provided with rotten bologna sandwiches and a pre-package container of four small cookies.This facility had not provided any sort of nourishment, or nourishing meals, or specialize meals for those with dietary needs/diabetics, food allergies, Vegetarian, or lactose intolerant.

7. When making a request, per the Americans with disabilities act, the plaintiff was denied of any and all accommodation by the staff.

8. The staff knowingly and intentionally violated federal law and laws created an enforced by the federal government to protect those with disabilities.

9. Plaintiff was forced for over 48 hours to lay on a concrete floor, and sub degree temperatures and subjected repeatedly to inhumane treatment. The plaintiff has undergone six spinal surgeries, which includes a failed fusion. The plaintiff at the time of incident had a herniated disc at C4 and C5 in her neck, had four elbow surgeries and had an ulnar nerve transposition

10. Plaintiff as pending a shoulder surgery in her left arm. The plaintiff informed the staff that she had a heart attack within the past year and a significant stroke within the past five years.

11. In regards to mental conditions, the plaintiff had been diagnosed with posttraumatic stress disorder and depressive disorder.

12. Plaintiff had been confirmed as disabled through the government and receive Social Security disability benefits for her disabilities. Per the Americans with disabilities act, the plaintiffrequested reasonable accommodation. Plaintiff requested medications, and a mat so that she wasn't laying on a concrete floor.

13. Plaintiff was told by the staff, "we don't do that here."

14. Repeatedly denied reasonable accommodation, which includes medications and medical care.

15. Immediately upon arrival, the plaintiff made it known to the staff that she had specific medical needs. I informed the staff that upon her arrival that she having chest pains. They were informed that I had a recent heart attack in 2020 and had a prior stroke in 2016. Initially, and for many hours afterwards, plaintiff was left without medical care, adequate treatment and medications.

16. Plaintiff made it known to the staff that her chest pains were increasing. She requested to go to the emergency room. It took the jail staff over 45 minutes to bring the nurse to check the plaintiff's blood pressure.

17. The plaintiff's blood pressure was taken and it was confirmed that it was elevated to heart attack and stroke level. They failed to render proper medical treatment, where she should have been sent to the emergency room for proper evaluation and treatment.

18. Plaintiff is legally prescribed by a pain management specialist, opioids for pain. On a daily basis, the plaintiff is prescribed a total of four hydrocodone 750 mg for pain. The medical facility repeatedly subjected me to cruel and unusual punishment by not providing her with proper medications, a certified and licensed physician for evaluation and denied medications to someone who is legally prescribed these medications for chronic pain.

19. The jail staff did so knowingly and intentionally deprive the plaintiff of medications, causing her to go through withdrawal symptoms, which can be deadly

20. The staff and medical staff offered absolutely no treatment in regards to the withdrawal symptoms that the plaintiff was experiencing. Rather, they mocked, laughed at the plaintiff and ignored her repeated requests and pleas for help. Even something as simple as a request for Pepto-Bismol was denied for withdrawal symptoms such as vomiting and diarrhea.

21. The plaintiff spoke to a nurses, who was accompanied by a correctional staff member. Due to incident, the plaintiff requested this correctional staff members name, which he refused.

22. The plaintiff was later informed by one of the additional inmates that his last name was "Camacho."

23. Plaintiff informed the nurse that she was going through extreme withdrawal symptoms. The staff nurse disregarded plaintiff Bays'claims and stated, "you don't look like you're going through withdrawls.

24. The plaintiff was suffering immensely. As she was noted as lying in a book in cell, other inmates can and will attest to the fact that she vomiting uncontrollably. The plaintiff was

experiencing symptoms of diarrhea, was unable to eat, had a fever, and was having chest pains. The plaintiff begged repeatedly for medical assistance, which was ignored.

25. Corrections officer identified by last name of Camacho, also made a false claim that he had checked on the plaintiff repeatedly and saw no signs of withdrawal. Note, camera surveillance will show that every 25 minutes, staff members within book in are prompted by a timer to conduct rounds. During these rounds, cameras within the facility can and will confirm that these correctional officers are not looking in to ensure the health, or safety of the inmates, but rather, only taking a handheld scanner to the barcode on the door and quickly moving onto the next. They are not Checking, or ensuring the safety/health of the residents being detained within this facility. Had this correctional officer been doing his job and actually checking on inmates, he would've found the plaintiff lying on the floor, vomiting profusely and experiencing symptoms of diarrhea and the inability to rest, or consume fluids/food.

26. The staff member refused to provide the plaintiff with medications, and to render medical aid, nor did they provide a licensed physician to assist her through withdrawal symptoms

27. The jail staff knowingly and intentionally refused to address issues of chest pain, symptoms of stroke and heart attack, nor did they provide appropriate means, or relief from extreme pain. What the staff members and medical staff within this facility did to me constitutes as violates the Americans with Disabilities Act and the Eighth Amendment.

28. They repeatedly, knowingly and intentionally submitted the plaintiff to cruel and unusual punishment

29. The plaintiff did not see a physician until after 10 days of being incarcerated. At no time did she receive the proper medications or dosage as prescribed by her licensed pain management and primary care physicians.

30. The nurses and physicians were provided with access to the plaintiffs medications, the proper dosage as they were prescribed through her physicians and the most recent transactions and prescription processing that was conducted by cvs.

31. Plaintiff suffers from chronic pain and has had six spine surgeries, including a failed fusion. Plaintiff was left to sleep on a cot, with a single mat for over 10 days without receiving reasonable accommodation, which applies even during incarceration to the Americans with disabilities act

32. Plaintiff was ordered to pay $15 to see the physician (and five dollars for every prescription) after the 10th day of unlawful incarceration.

33. Abruptly stopping medically necessary treatment is cruel, discriminatory, and potentially deadly. Incarceration does not take away a person's right to continue doctor-prescribed,

life-saving treatment. This applies to people who have opioid use disorder just as it does for people who have any other disability or medical condition.

34. Jail officials have a legal duty to care for and uphold the rights of every single person in their custody.

35. During the plaintiff's time of unlawful detainment, she was informed that she to be scheduled for an extradition hearing for an alleged warrant, that was unknown to the plaintive. This warrant was over six years old from a state that the plaintiff had not resided in for over six years.

36. Upon the plaintiff's arrival to the facility, and within a few hours, the plaintiff was coerced into signing a sworn document, providing my information, identity to confirm that she was to be extradited to the state of Indiana.

37. The plaintiff was told by a corporal within book-in that she would see a judge for a hearing on extradition within 24 hour.

38. At no point during the 27 days that the plaintiff was unlawfully detained was she ever provided with a hearing, or even information, date, or time of a hearing

39. The plaintiff filed numerous grievances demanding my extradition documents that she signed and information reference a hearing, court date and time.

40. The staff, and the administration, refused to provide the plaintiff with these documents and refused to provide her with a schedule date for a hearing.

41. Plaintiff was told and threatened by the staff repeatedly that they could hold her for as long as they wanted to

42. Evidence will show that the plaintiff filed two sets of documents consecutively requesting a court appointed attorney

43. Those documents were never processed   by the staff, and the plaintiff was never provided with any sort of legal representation from the state of Texas

44. Access to speak with, or obtain an attorney was repeatedly denied. Filed grievances prove this. Repeatedly, the plaintiffs right to due process and the right to an attorney was violated

45. The staff within this facility knowingly and intentionally violated the plaintiffs right to an attorney. They refused to allow her access, phone calls, and contact information to attorneys that would be able to obtain my extradition documents and to confirm whether an actual hearing had been scheduled.

46. On December 5, the plaintiff filed additional grievances in reference to violations of her constitutional rights and demanded information on extradition, her release, as well as the date and time of this alleged hearing.

47. An employee who identified herself as Hannah, with the Guadalupe County Jail administration came to the plaintiff's cell and made the false claim that she had filed for a hearing.

48. The plaintiff demanded that she be provided with the date and time, which she then stated, "I can't provide you with it for security reasons."

49. The plaintiff had the right to have counsel present during any legal proceedings or hearings.

50. Plaintiff informed "Hannah" with the Guadalupe County Jail administration that she was violating her constitutional rights and that she had a right to know the date and time of any proceedings and to inform counsel so that they could be present.

51. After exercising her first amendment right, the plaintiff was punished unjustly and removed from the cell.

52. The plaintiff was unjustly punished and placed in solitary confinement, where she was denied access to all outside communication, including a telephone and a means to contact my attorney

53. Inmates have the right both to voice complaints and file appropriate grievances, about prison conditions and to voice their concerns to both prison officials and the courts.

54. Inmates who have been denied these rights have received civil judgments against prison officials for incidents such as being placed in solitary confinement after complaining about prison conditions

55. After her release, the plaintive contacted the 25th district court, which "Hannah", with Guadalupe County Jail administration claimed my hearing would be out of to determine if a date and time had actually been set. This court had no record of an extradition hearing under the plaintiffs name

56. From the dates of November 10, 2021 to the plaintiff's release date of December 5, 2021, she was repeatedly subjected to repeated violations of her civil and constitutional rights

57. The rights include, but are not limited t o:

- *The right to humane facilities and conditions
- The right to be free from sexual crimes
- The right to be free from racial segregation
- The right to express condition complaints
- The right to assert their rights under the Americans with Disabilities Act

58. There is significant evidence to support that the Plaintiffs right to medical care and attention as needed were repeatedly violated.

59. The plaintiffs right to appropriate mental health care were repeatedly violated.

60. Evidence will show that the plaintifffiled multiple grievances on inhumane treatment and abuse.

61. The plaintiff was repeatedly forced to wear soiled and dirty. All of the iissued uniforms and undergarments, there were stains, holes in the crotch, worn elastic to where my pants would fall down when the plaintiff attempted to walk.

62. In the undergarments assigned, there were menstrual stains, remnants of feces from where others had worn them. The clothes provided were not correct, or appropriately sized

63. The T-shirts that were provided were brown and had perspiration stains under the armpits and additional stains throughout the fabric. They were worn, many of them were filled with holes, and we're unfit for any human to wear.

64. The uniforms provided had an offensive smell to them, as if they had not been laundered.

65. Upon being moved from a quarantine cell to general population, the plaintiff had been overlooked in reference to obtaining clean uniforms

66. The plaintiff addressed a staff member, identified as corrections officer "Reyes" and requested clean clothing, which should have been issued that evening.

67. This officer deliberately ignored the plaintiffs request for clean clothing, When the plaintiff attempted to speak with staff member Reyes, she would deliberately ignore the plaintiff and walk away.

68. The plaintiff has evidence to show that she filed two grievances and additional complaints of abuse against Officer Reyes.

69. After being reprimanded, Officer Reyes entered the cell to confront the plaintiff. Reyes, threw a wod of clothing at the plaintive while she was sleeping.

70. The undergarments that Reyes threw at the Plaintiff showed evidence of feces and menstruation stains in them.

71. She provided the plaintiff with uniforms that were soiled, unlaundered with, sizes that were excessive and not an appropriate fit

72. When the plaintiff would walk in the oversize clothing, her pants would fall below my waist.

73. There was an established pattern of forcing inmates to wear soiled, stained, worn and inappropriate uniforms. This facility is knowingly intentionally creating health hazards to others, by forcing them to wear clothing and undergarments that are soil with feces and blood and that are not being laundered appropriately

74. In regards to the meals served, there is absolutely no nutritional value in what they are providing to the residents. Inmates with specialty diets, that are lactose intolerant, with food allergies, that have health concerns with particular foods, they are ignored by the staff.

75. During the plaintiffs 27 days of unlawful incarceration and what she described as a living hell within this facility, she lost over 25 pounds and was left extremely malnourished.

76. After her release, the plaintiff had to undergo medical care for the malnourishment as a result of the abuse she was subjected to at this facility and by the staff.

77. The meals at the Guadalupe adult detention center are not cooked appropriately, or thoroughly. They refuse to provide inmates with fresh fruits or vegetables.

78. During my 27 days within this facility, not one portion or serving of fresh fruits, or any fruit for that matter was served. These meals lacked nutrients and protein that is essential for daily function.

79. The first three days of incarceration, the plaintiff was served expired meals by the staff. These meals consisted of spoiled bologna sandwiches in a brown paper bag. At the residence, produced evidence of hair, insects, and other foreign matter in the sandwich is provided

80. The plaintiff had the right to be free of sexual harassment and sexual crimes within this facility.

81. These rights were violated by members of staff. Staff members repeatedly ignored complaints and grievances reference sexual harassment and abuse within the cells..

Inmates making inappropriate comments, gestures and threats of sexual abuse, torture and punishment

82. The staff ignored, repeated complaints regardingsexual violence/bodily injury against the plaintiff.

83.  There is evidence to show that staff members and correctional officers made threatening claims that they could do whatever they wanted and hold the plaintiff for as long as they wanted.

84. During this time of being incarcerated, the plaintiff was threatened with physical violence, sexual violence and subjected to additional crimes, such as theft and battery from other inmates.

85. The plaintiff repeatedly had her personal items and effects stolen from her. These were items that had been purchased from commissary repeatedly stolen

86.  The plaintiff file grievances, and Complaints, where the jail staff took no initiative, nor did they investigate. The Guadalupe detention center staff deliberately ignored and disregarded these crimes.

87. The jail staff allowed and even encouraged the violent threats to ensue. They also disregarded sexual harassment, and threats of sexual violence

88. It was repeatedly subjected to discrimination based upon sex. During my time in this facility, the plaintiff was discriminated against, and informed that she was not of the appropriate, gender, or sex to apply, or be selected as a trustee

89. The staff willonly accept male  inmates for their trustee program. They exclude female inmates from the benefits that come with this program. There are a number of benefits, which includes an additional day of served time. 3/1 days. Female inmates should be eligible, but are deliberately excluded.

90. There is also discrimination based upon a medical exam. The staff knowingly, and intentionally exclude those who would request reasonable accommodations, who have disabilities who could still do the work of a trustee.

91. The Guadalupe county detention center is knowingly and intentionally disregarding federal law, the Americans with disability act and deliberately discriminating against female inmates by excluding them from programs that they should be eligible to participate in.

92. Upon filing grievances and complaints, the plaintiff was met with retaliation. These grievances were not investigated in accordance to the law, state/federal, or the constitution.

93. Repeated requests and grievances in regards to the plaintiffs right to due process, her right to an attorney, her right to medical care, discrimination based upon disability and sex and cruel and unusual punishment were ignored.

94. The plaintiff maintained and documented the grievances filed. Each grievance shows evidence the responses provided by the supervisors tasked to investigate failed to address them

95. Grievances were not addressed appropriately, or in accordance to the law. This includes both state and federal. The investigating supervisors disregarded federal violations and violations to the Americans with disabilities act as well.

- Throughout the 27 day of false arrest and incarceration, the plaintiff had been subjected to:
- extreme trauma
- unnecessary pain and suffering based upon the violations of the Americans with disability act
- the lack of medical care and treatment
- the lack of mental health treatment within this facility. the lack of medical care, proper medications, having access to a licensed medical physician, and being treated inhumanely has caused lasting and irreversible affects not only to the plaintiffs physical, but mental health. The Plaintiffs pain, and suffering was so intense and had been ignored to the point to where she became suicidal

96. The plaintiff never received proper       care, both physical, medical or mental health treatment within this facility. Filing complaints, grievances, those were ignored. By filing these grievances, the plaintiff was targeted and unjustly,Iunfairly punished.

97. A zoom meeting with a judge from Hamilton County Indiana was ordered to address the alleged warrant and extradition that had been denied by Guadalupe county detention center..

98. The Honorable Judge Hughes with a Hamilton county superior court, demanded the plaintiffs immediate release.

99. The Guadalupe county detention center refused to comply with the judges orders and to process the proper paperwork for the plaintiffs immediate release.

100. Given that they had violated this judges orders and refusing to release, the complaint filed multiple grievances.

101.  In retaliation, the staff ordered for the plaintiff sent to be moved from my cell, where she was placed in solitary confinement

102. This request was made per Guadalupe County administrative assistant "Hannah" And corrections officer Caraway.

103. The plaintiff was escorted from her general population cell by a member of the CERT team to a cell in protective custody.

104.  The plaintiff requested repeatedly information on why she was being removed from general population. The staff refused to provide her with an explanation. This was done purely out of retaliation and for utilizing the plaintive's first amendment right to speak freely.

105. The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships." Gerstein v. Pugh, 420 U.S. 103, 114 (1975).

106. County administrators, policymakers, the Sheriff, supervisors, and employees caused the unjustified overdetention of Plaintiff and all other members of the Class by deliberate indifference to the risk of constitutional injury from overdetention arising from, inter alia: Unnecessary delays between payment and release processing resulting from the County's preference for releasing batches of released detainees; the use of designated areas to continue holding inmates who have already been released or bailed out, despite the absence of any legal authority for their continued detention; the County's failure to assign adequate staff to the bail/release processing system, and/or the failure to train and/or supervise and/or discipline County staff to ensure and effectuate the prompt release of detainees

107. Immediately after being placed in this protective custody cell, the plaintiff began to experience symptoms of a heart attack. Plaintiffs heart rate was elevated, she began sweating profusely and was having chest pains.

108. The symptoms escalated to where the plaintiff began experiencing slurred speech, tingling on the left side of her  face and head, tingling in the left extremities, and a severe headache.

109. For hours the plaintiff begged formedical treatment. The corrections officer who was responsible for care of inmates within
this protective custody area was identified as Officer Brown.

110. This correctional officer knowingly and intentionally refused to render medical treatment. Rather, he harassed, mocked and laughed as the plaintiff was experiencing symptoms of a heart attack and an additional stroke.

111. The plaintiff was recorded and noted by other inmates in the surrounding cells that she was begging repeatedly for medical treatment, which was refused.

112. For over two hours the plaintiff begged and cried for this correctional officer to allow her to communicate to family by use of the telephone.

113. After two hours of constantly begging and crying for medical treatment, this officer rolled the telephone in front of the Plaintiffs cell door. This disabled American had to make the telephone call while sitting on a concrete floor.

114. Corrections Officer Brown forced the plaintiff to sit on a concrete floor and make a phone call, having to extend her body to reach the phone from the floor.

115. The plaintiff Immediately contacted her family and informed them that Iwas experiencing a medical emergency and that the facility was refusing to render medical treatment

116. The plaintiffs  mother was on the phone with me as correctional officer Brown mocked and disregarded the plaintiffs cries for assistance.

117. The plaintiffs mother is witness to the fact that  Officer Brown that put on notice that he was in violation of the Americans with disabilities act and that he had a responsibility to render medical care.

118. In a jail, recorded phone, call, Officer Brown, laughed, mocked the plaintiff again and walked away.

119. The plaintiffs mother also recorded as numerous attempts were made to summons for help using the emergency button in the room.

120. When corrections officers answered, the plaintiffs mother was witness and recorded the fact that they disregarded her pleas for medical assistance and the fact that they were violating the Americans with disabilities act.

121. For hours while the plaintiff lay in medical distress, Officer Brown harassed the plaintiff through the glass in the door.

122. Corrections Officer Brown was documented as he would place his face against the glass, make
 faces at the Plaintiff, calling her crazy, and refusing to provide the plaintiff with a nurse, physician or medical treatment.

123. There were repeated requests for reasonable accommodation made to corrections, Officer Brown, which were disregarded.

124. Officer Brown was documented as stating "You have reasonable accommodations, a bed, a toilet and a shower, now shut up."

125. After nearly 4 hours of begging for help, the other inmates in the surrounding sells rallied to get the Plaintiff appropriate Assistance. They all began yelling and hitting their call buttons and demanding that the correction officer get a nurse

126. During which time, the plaintiffs attorney and my family also called the facility demanding that they provide assistance.

127. After four hours, a nurse finally arrived at the Plaintiffs cell door. The only assistance that this nurse provided was by taking her blood pressure. Her blood pressure was elevated to a level of 159/105. She ignored the fact that the plaitniff was experiencing symptoms of not just a heart attack, but an additional stroke. She rendered absolutely no medical care.

128. Around the time of shift change, which was 7 PM, and additional nurse came to the plaintiffs cell door. She was accompanied by a staff member who also refused to provide the plaintiff with a means to communicate and a telephone

129. The members of the Guadalupe county detention center staff had deliberately cut off communication so that the plaintiff could not communicate with her family, to her attorneys and to prevent her from retrieving medical care.

130. After a lapse of nearly 4 hours, the staff nurse also took the plaintiffs blood pressure which was again at an elevated level which constituted that of a heart attack/stroke. The plaintiff was noted, begging for Emergency care.

131. Documentation shows that stated that the nurse advised she would call the physician, but refused to have me transported to an emergency room.

132. This was a true medical emergency and the staff within this facility refused to comply with state and federal law, ignoring what was a life-threatening condition.

133. The staff at this facility was ignoring the fact that my family had also arrived at the facility to check on the Plaintiffs welfare.

134. The staff had attempted to refuse visitation and for the Plaintiffs family to check her welfare.. The nurse that was attending to me made threats that she was going to put the plaintiff in a padded cell within the medical portion of the facility.

135. The nurse, who refuse to provide the plaintiff with her license number and name made the statement, "you won't have a choice if Itell you to go there."

136. Repeatedly, the Guadalupe detention center staff ignored a medical condition/emergency. Placing someone in a padded cell, and solitary confinement, where they are forced to urinate and defecate in a hole constitutes as cruel and unusual punishment.

137. The plaintiffs mother reiterated to the jail staff that her immediate release had been ordered through a Hamilton county judge.

138. There is evidence to show that the plaintiff had been released, yet the staff within the detention center, yet they chose to keep the plaintiff contained in solitary confinement, while experiencing a medical emergency.

139. After threats of legal action from the Plaintiffs family, the staff opted to take the plaintiff to the nurses station were they again took her blood pressure. Her blood pressure was taken two additional times where the levels kept increasing.

140. Around 10:30 PM, there was a spike in the plantains blood pressure. Her blood pressure around this time had elevated to the point of 160/109.

141. Medical documentation confirmed that the plaintiff had an additional heart attack and a stroke.

142. The plaintiff sustained multiple injuries, which includes permanent blindness in her left eye due to the staffs failure to render medical care.

143. There is irreversible damage to the plaintiffs heart, coordination, manual, dexterity, speech, and memory. There is irreversible damage to coronary muscles and heart.
a. Actual damages;
b. Medical expenses incurred in the past;
c. Mental anguish and emotional distress suffered by Ms Bays;
d. Mental anguish and emotional distress suffered by Plaintiffs;
e. Lost earning capacity;
f. care, guidance, love, affection, or counsel;
g. . Lost household services;
h. Pain and suffering by Ms Bays;
i. Lost enjoyment of life;
j. Pre-judgment interest; and
k. Post-judgment interest.

144. Residents who have been charged, and not convicted of crimes should be considered innocent until proven guilty in a court of law.

145. There is documented evidence and reasonable cause to believe that any State or political subdivision of a State, official, employee, or agent thereof, or other person acting on behalf of a State or political subdivision of a State is subjecting persons residing in or confined to an institution, as defined in section 1997 of this title, to egregious or flagrant conditions which deprive such persons of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States causing such persons to suffer grievous harm, and that such deprivation is pursuant to a pattern or practice ofresistance to the full enjoyment of such rights, privileges, or immunities, the Attorney General, for or in the name of the United States, may institute a civil action in any appropriate United States district court against such party for such equitable relief as may be appropriate toinsure the minimum corrective measures necessary to insure the ful enjoyment of such rights, privileges, or immunities, except that such equitable relief shall be available under this subchapter to persons residing in or confined to an institution as defined in section 1997(1)(B)(ii) of this title only insofar as such persons are subjected to conditions which deprive them of rights, privileges, or immunities secured or protected by the Constitution of the United States.

146. Ms Bays was a qualified individual under the ADA as she had multiple physical impairments which limited one or more of her major life activities, including major bodily functions.

147. Specifically, Ms Bays had a history of disability, due to orthopedic issues which included six spine surgeries, a failed fusion, for ulnar nerve surgeries, a herniated disc at C4 and C5, a torn, rotator cuff and torn meniscus in her left knee. She also had a history of a known heart defect, heart attack, and stroke.

148. Which required ongoing medical care and medications.

149. Guadalupe County was aware of Ms Bays disabilities through his paperwork, visits to the clinic, prescribed medications, and complaints made.

.

150. Despite the knowledge of Ms Bays physical condition, Guadalupe County discriminated against Ms. Bays under the meaning of the ADA and the Rehabilitation Act, by failing and refusing to provide her with her appropriate medications timely and by failing to provide a thorough and proper evaluation, testing, and treatment plan for her ongoing physical condition and verbal complaints.

Guadalupe county County refused to reasonably modify its policies, practices, or procedures to ensure Ms Bays access to the facilities, services. programs. or activities of the Jail by reasonably accommodating her known disabilities including failing to provide full treatment and being deliberately indifferent to her medical condition

**County Sheriff is the Policymaker for the County Jail** .

- Under well-established Texas law, the Guadalupe County Sheriff is the final policymaker for the Guadalupe County Jail for the purpose of holding the County liable under § 1983.

- The Sheriff position regardless of the individual holding that position is the policymaker

- Sheriff Arnold Zwicke was elected as the Sheriff of Guadalupe County during the time of incident with specific responsibilities over the Guadalupe County Jail.

- Sheriff Arnold Zwicke was the policymaker when Plaintiff suffered her injuries

**VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C. § 12131, ET SEQ.) AND SECTION 504 OF THE REHABILITATION ACT OF 1973 (29 U.S.C. § 794, ET SEQ.).**

- Plaintiff also brings claims against Guadalupe County for violations of Title I of the Americans with Disabilities Act (42 U.S.C. §§ 12131, et. seq.) and the Rehabilitation Act (29 U.S.C. § 701, et seq.).

- Guadalupe County has been, and currently is, a recipient of federal funds.

- PLAINTIFF . Both the ADA and the Rehabilitation Act protect pre- trial detainees with disabilities in county and state jails from discrimination         based on their disability.

- To establish a claim under either of these acts, Plaintiffs must show: (1) they are a qualified individual under the ADA; (2) they are excluded or denied benefits of services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against; and (3) the denial or discrimination is by reason of the disability.

- The definition of qualified individual is defined broadly under the ADA.

- The County has an obligation to provide modifications to their policies, procedures, and practices even if not requested if they know or should know that a detainee is disabled and need a modification

- The operation of the Jail comprises services, programs, or activities of Guadalupe County for purposes of these acts.

- Guadalupe County intentionally discriminated against Plaintiffs because of their mental and physical disabilities by failing to provide medications timely, by failing to modify

medical care in accordance with their physical condition, by failing to modify observation and monitoring

## VIOLATION OF THE FOURTEENTH AMENDMENT: PURSUANT TO 42 U.S.C. § 1983; FAILURE TO TRAIN OR SUPERVISE.

- Plaintiff incorporate the foregoing paragraphs as if set forth herein.

- Plaintiff also brings claims for Guadalupe County's deliberate failure to train and/or supervise their Jail employees which resulted in the violation of Plaintiffs' constitutional rights.

- For a failure to train claim, Plaintiffs must show (1) the training policy and procedures were inadequate; (2) the County was deliberately indifferent in adopting its training policy and procedures; and (3) the inadequate training policy and procedures directly caused the constitutional violation.

- As shown above,  Guadalupe County and its policymaker, Sheriff Zwicke, have been aware of the Jail's rampant culture of violence, excessive use of force, lack of medical care, and lack of observation for many years; yet, despite being made aware of their deficiencies, Sheriff Zwicke has continued with the same training policies and practices and has not implemented new policies or practices that would correct the failure of the Jail employees. These issues have not been addressed by any Guadalupe County Sheriff.


## DAMAGES

Plaintiffs incorporate the foregoing paragraphs as if set forth fully herein.

Plaintiffs seek compensatory damages, pre and post judgment interest, costs, and attorney's fees to the maximum amounts allowed by law.

Plaintiffs each suffered the following damages as a direct and proximate result of Guadalupe County's violations as identified above;

a. Actual damages;
b. Medical expenses incurred in the past;
c. Mental anguish and emotional distress suffered by Ms Bays;
d. Mental anguish and emotional distress suffered by Plaintiffs;
e. Lost earning capacity;
f.  care, guidance, love, affection, or counsel;
g. . Lost household services;

h. Pain and suffering by Ms Bays;

i. Lost enjoyment of life;

j. Pre-judgment interest; and

k. Post-judgment interest.

## ATTORNEY'S FEES

Plaintiffs incorporate the foregoing paragraphs as if set forth fully herein.

Pursuant to 42 U.S.C. § 1988; 42 U.S.C. § 12205; and 29 U.S.C. § 794a, Plaintiffs
are entitled to recover their attorney's fees and costs.

## JURY REQUEST

Plaintiffs respectfully request a trial by a jury of their peers on all matters triable to a jury.
Plaintiffs will tender the appropriate fee.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray that judgment be rendered against
Defendant Guadalupe County, for an amount in excess of the jurisdictional limits of this Court.
Plaintiffs further pray for all other relief, both legal and equitable, to which they may show
themselves entitled.

Respectfully submitted,

Olivia L Bays
6161 El Cajon Blvd 805
San Diego, California 92115
(619) 886-7315
O.bays@protonmail.com

12-2-23

Attachment 1 - Civil Complaint

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## _____ DIVISION

Olivia Bays
_____

(Enter your full name)
Plaintiff(s)

CASE NUMBER: _____

(Supplied by Clerk's Office)

Guadalupe county sheriffs department
_____

(Enter full name of each Defendant)
Defendant(s)

## COMPLAINT

First Paragraph (Name and Address of Plaintiff) Olivia Bays 6161 El Cajon Blvd , #805, San Diego, CA. 92115

Second Paragraph (Name and Address(es) of Defendant(s))    Guadalupe county sherif department -

Third Paragraph (Jurisdiction Plea) District of Texas. Defendant in 2617 N. Guadalupe Stre all incidents, events occurred in Guadalupe county, Texas. Seguin, TX 78155

Fourth Paragraph (Allegation 1)

Civil rights violation section 1980 See attached brief

Fifth Paragraph (Allegation 2) ...

Refer to attached brief for filing

The final paragraph should contain a statement of the relief you are seeking.    This paragraph should not be numbered.

Punitive damages for physical injuries, emotional distress, as described in the enclosed bri

_____

Signature
Name (Typed or Printed)    Olivia Bays
Address    6161 El Cajon Blvd 805
Telephone Number    San Diego CA 92115
619-886-7315

Rev. Ed. October 26, 2017

27