IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS DIVISION

OLIVIA L BAYS
**Plaintiff**

**v.**

Sheriff Arnold Zwicke
GUADALUPE COUNTY SHERIFF, TEXAS,
**Defendant**

CIVIL ACTION NO: 5:23-cv-01519-FB-RBF

**Response to Defendant Arnold Zwicke's Motion To Dismiss:**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff, Olivia Bays files a motion in response to the defendants motion to dismiss pursuant to federal rules of civil procedure 12(b)(1) and 12(b)(6)

**A. Claims Against Defendant Arnold Zwicke
Guadalupe County Sheriff's Department**

On November 11, 2021, the plaintiff's vehicle was stopped unlawfully by the New Braunfels Police Department. Body camera footage will show that this department targeted the plaintiff

maliciously for filing complaints against their officers. This agency had targeted the plaintiff specifically and made the false claim that they had a valid reason to stop her vehicle. There is evidence to show that the New Braunfels police officer, Joel Hawk, did so knowingly and intentionally stop the plaintiffs vehicle maliciously, without probable, infraction, nor reasonable cause to stop the vehicle. The plaintiff was transported to the Guadalupe County Jail and was unlawfully detained at the Guadalupe County adult detention center between November 11, 2021 and December 5, 2021.

In regards Cause of action (1) Violations of Title II of the Americans with disability act in section 504 of the rehabilitation act, the plaintiff didn't fax state multiple claims upon which relief could be granted and the original complaint.

### VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C. § 12131. ET SEQ.) AND SECTION 504 OF THE REHABILITATION ACT OF 1973 (29 U.S.C. § 794. ET SEQ./ Violations of the 8th and 14th Amendments Pursuant to 42 U.S.C . 198 For Failure To Train, Or Supervise

- Plaintiff also brings claims against Guadalupe County for violations of Title II of the Americans with Disabilities Act (42 U.S.C. §§ 12131, et. seq.) and the Rehabilitation Act (29 U.S.C. § 701, et seq.).

- Guadalupe County has been, and currently is a recipient of federal funds for documented medical disabilities. The ADA and Section 504 apply when the following elements are met):
- 1. Plaintiff has a disability within the meaning of the law.
- Plaintiff is otherwise qualified for the program, service or benefit..
- Under section 504, the plaintiff receives federal funding for disabilities.

- Both the ADA and the Rehabilitation Act protect pre- trial detainees with disabilities in county and state jails from discrimination based on their disability.

- Plaintiff is a qualified individual under the ADA; (2) they are excluded or denied benefits of services, programs, or activities for which the public entity is responsible, was discriminated against; and (3) the denied and discriminated by reason of the disability.

- Sheriff Arnold Zwicke and a Guadalupe county detention center has an obligation to provide modifications to their policies, procedures, and practices even if not requested if they know or should know that a detainee is disabled and need a modification

- The operation of the Jail comprises services, programs, or activities of Guadalupe County for purposes of these acts.

- Guadalupe County intentionally discriminated against the Plaintiff because of her mental and physical disabilities by failing to provide medications timely, by failing to modify medical care in accordance with their physical condition, by failing to modify observation and monitoring

1. Plaintiff was forced for over 48 hours to lay on a concrete floor, and sub degree temperatures and subjected repeatedly to inhumane treatment. The plaintiff has undergone six spinal surgeries, which includes a failed fusion. The plaintiff at the time of incident had a herniated disc at C4 and C5 in her neck, had four elbow surgeries and had an ulnar nerve transposition

2. Plaintiff as pending a shoulder surgery in her left arm. The plaintiff informed the staff that she had a heart attack within the past year and a significant stroke within the past five years.

3. In regards to mental conditions, the plaintiff had been diagnosed with posttraumatic stress disorder and depressive disorder. The plaintiff was denied accommodation and treatment for post, traumatic stress disorder, a mental health diagnosis. This diagnosis was expressed to the jail staff, medical staff on a repeated basis. Plaintiff express to staff members that she was suicidal, where there was no intervention, treatment, or acknowledgment of this mental health crisis.

4. Plaintiff had been confirmed as disabled through the government and receive Social Security disability benefits for her disabilities. Per the Americans with disabilities act, the plaintiff requested reasonable accommodation. Plaintiff requested medications, and a mat so that the chronic pain experienced due to the failed spinal fusion, six spinal surgeries, and herniated disc and her neck did not worsen.

5. Plaintiff was told by the staff, "we don't do that here."

6. Repeatedly denied reasonable accommodation, which includes medications and medical care .In Pierce v. D.C., No. 13-CV-0134, --- F.Supp.3d ---, 2015 WL 7574750, at *3 (D.D.C.

7. Nov. 25, 2015), the court granted summary judgment to the plaintiffs finding that the prison had an affirmative duty under the ADA and the Section 504 to evaluate the accommodation needs of obviously disabled prisoners

8. Immediately upon arrival, the plaintiff made it known to the staff that she had specific medical needs. I informed the staff that upon her arrival that she having chest pains. They were informed that I had a recent heart attack in 2020 and had a prior stroke in 2016. Initially, and for many hours afterwards, plaintiff was left without medical care, adequate treatment and medications.

9. Plaintiff made it known to the staff that her chest pains were increasing. She requested to go to the emergency room. It took the jail staff over 45 minutes to bring the nurse to check the plaintiff's blood pressure.

10. The plaintiff's blood pressure was taken and it was confirmed that it was elevated to heart attack and stroke level. They failed to render proper medical treatment, where she should have been sent to the emergency room for proper evaluation and treatment.

11. Plaintiff is legally prescribed by a pain management specialist, opioids for pain. On a daily basis, the plaintiff is prescribed a total of four hydrocodone 750 mg for pain. The medical facility repeatedly subjected me to cruel and unusual punishment by not providing her with proper medications, a certified and licensed physician for evaluation and denied medications to someone who is legally prescribed these medications for chronic pain.

12. The jail staff did so knowingly and intentionally deprive the plaintiff of medications, causing her to go through withdrawal symptoms. Which constitutes as cruel and unusual punishment.

13. The staff and medical staff offered absolutely no treatment in regards to the withdrawal symptoms that the plaintiff was experiencing. Rather, they mocked, laughed at the plaintiff and ignored her repeated requests and pleas for help. Even something as simple as a request for Pepto-Bismol was denied for withdrawal symptoms such as vomiting and diarrhea.

14. The plaintiff spoke to a nurses, who was accompanied by a correctional staff member. Due to incident, the plaintiff requested this correctional staff members name, which he refused.

15. Plaintiff informed the nurse that she was going through extreme withdrawal symptoms. The staff nurse disregarded plaintiff Bays' claims and stated, "you don't look like you're going through withdrawls.

16. The plaintiff was suffering immensely. As she was noted as lying in a book in cell, other inmates can and will attest to the fact that she vomiting uncontrollably. The plaintiff was experiencing symptoms of diarrhea, was unable to eat, had a fever, and was having chest pains. The plaintiff begged repeatedly for medical assistance, which was ignored.

17. Corrections officer identified by last name of Camacho, also made a false claim that he had checked on the plaintiff repeatedly and saw no signs of withdrawal. Note, camera surveillance will show that every 25 minutes, staff members within book in are prompted by a timer to conduct rounds. During these rounds, cameras within the facility can and will confirm that these correctional officers are not looking in to ensure the health, or safety of the inmates, but rather, only taking a handheld scanner to the barcode on the

door and quickly moving onto the next. They are not Checking, or ensuring the safety/health of the residents being detained within this facility. Had this correctional officer been doing his job and actually checking on inmates, he would've found the plaintiff lying on the floor, vomiting profusely and experiencing symptoms of diarrhea and the inability to rest, or consume fluids/food.

18. The staff member refused to provide the plaintiff with medications, and to render medical aid, nor did they provide a licensed physician to assist her through withdrawal symptoms

19. The jail staff knowingly and intentionally refused to address issues of chest pain, symptoms of stroke and heart attack, nor did they provide appropriate means, or relief from extreme pain. What the staff members and medical staff within this facility did to me constitutes as violates the Americans with Disabilities Act and the Eighth Amendment.

20. They repeatedly, knowingly and intentionally submitted the plaintiff to cruel and unusual punishment

21. The plaintiff did not see a physician until after 10 days of being incarcerated. At no time did she receive the proper medications or dosage as prescribed by her licensed pain management and primary care physicians.

22. The nurses and physicians were provided with access to the plaintiffs medications, the proper dosage as they were prescribed through her physicians and the most recent transactions and prescription processing that was conducted by cvs.

23. Plaintiff suffers from chronic pain and has had six spine surgeries, including a failed spinal fusion. Plaintiff was left to sleep on a metal cot, with a single mat for over 10 days without receiving reasonable accommodation, which applies even during incarceration to the Americans with disabilities act

24. Abruptly stopping medically necessary treatment is cruel, discriminatory, and potentially deadly. Incarceration does not take away a person's right to continue doctor-prescribed, life-saving treatment. This applies to people who have opioid use disorder just as it does for people who have any other disability or medical condition.

25. Jail officials have a legal duty to care for and uphold the rights of every single person in their custody.

26. There is significant evidence to support that the Plaintiffs right to medical care and attention as needed were repeatedly violated.

27. The plaintiffs' right to appropriate mental health care were repeatedly violated.

28. Evidence will show that the plaintiff filed multiple grievances on inhumane treatment and abuse that were deliberately disregarded, that went without investigation, and remedy in accordance to law.

29. The staff only accepted male inmates for their trustee program. They exclude female inmates from the benefits that come with this program. There are a number of benefits, which includes an additional day of served time. 3/1 days. The plaintiff was deliberately excluded. A grievance was filed and disregarded by staff.

30. There is also discrimination based upon a medical exam. The staff knowingly, and intentionally exclude those who would request reasonable accommodations, who have disabilities who could still do the work of a trustee.

31. The Guadalupe county detention center is knowingly and intentionally disregarding federal law, the Americans with disability act and deliberately discriminating against female and disabled inmates by excluding them from programs that they should be eligible to participate in. a grievance was filed by the plaintiff.

32. Upon filing grievances and complaints, the plaintiff was met with retaliation. These grievances were not investigated in accordance to the law, state/federal. Title II of the ADA states that "no qualified individual with a disability shall be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity."

33. After filing grievances, the plaintiff was placed in solitary confinement as punishment. Tennesee v. Lane and Goodman v. Georgia apply in this case as the 14th Amendment forbids cruel and unusual punishment.

34. Repeated requests and grievances in regards to the plaintiffs right to due process, her right to an attorney, her right to medical care, discrimination based upon disability and sex and cruel and unusual punishment were ignored. Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206 (1998), the U.S. Supreme Court held that Title II of the ADA applied to state correctional facilities, and that a prisoner could not be excluded from an educational opportunity (a "Motivational Boot Camp" for first-time offenders) because of his disability, in this case hypertension.

35. The plaintiff maintained and documented the grievances filed. Each grievance shows evidence the responses provided by the supervisors tasked to investigate failed to address them Exhibit A

36. Grievances were not addressed appropriately, or in accordance to the law. This includes both state and federal. The investigating supervisors disregarded federal violations and violations to the Americans with disabilities act as well.Throughout the 27 day of false arrest and incarceration, the plaintiff had been subjected to extreme trauma,

unnecessary pain and suffering based upon the violations of the Americans with disability act

37. the lack of medical care, prescribed medication's and treatment. Plaintiff was denied a cane that was commonly used in her daily life for walking. Norfleet v. Walker, 684 F.3d 688, 690 (7th Cir. 2012), the plaintiff a prisoner with a nerve condition who used a wheelchair stated a claim against IDOC for violation of the Section 504 with allegations that he was denied access to yard, or other recreation because of his disability. Jaros v. Illinois Dep't of Corr., 684 F.3d 667 (7th Cir. 2012), the appellate court found that a prisoner who walked with a cane stated claims under the Section 504 for denials of access to meals and showers, as well as for his exclusion from a work release program, on the basis of his disability.

38. The lack of mental health treatment within this facility. the lack of medical care, proper medications, having access to a licensed medical physician, and being treated inhumanely has caused lasting and irreversible affects not only to the plaintiffs physical, but mental health. The Plaintiffs pain, and suffering was so intense and had been ignored to the point to where she became suicidal

39. In an active retaliation, the jail staff placed the plaintiff in solitary confinement. During this confinement, the plaintiff began to experience symptoms of a heart attack. Plaintiffs heart rate was elevated, she began sweating profusely and was having chest pains. In 2013, the U.S. Department of Justice found that the Pennsylvania prison system violated the ADA with its use of solitary confinement for prisoners with serious mental illness.

40. Prisoners in other states, including Illinois, have brought ADA claims relating to the use of segregation for people with mental illness. The plaintive has a medical diagnosis of post traumatic stress disorder that was disclosed to the Guadalupe county detention center, correctional staff, and medical staff.

41. The symptoms escalated to where the plaintiff began experiencing slurred speech, tingling on the left side of her  face and head, tingling in the left extremities, and a severe headache.

42. For hours the plaintiff begged for medical assistance. The corrections officer who was responsible for care of inmates within the protective custody officer was identified as "Officer Brown."

43. This correctional officer knowingly and intentionally refused to render medical treatment. Rather, he harassed, provoked, mocked and laughed as the plaintiff was experiencing symptoms of a heart attack and an additional stroke.

44. The plaintiff was recorded and noted by other inmates in the surrounding cells that she was begging repeatedly for medical treatment, which was refused.

45. For over two hours the plaintiff begged and cried for this correctional officer to allow her to communicate to family by use of the telephone.

46. After two hours of constantly begging and crying for medical treatment, this officer rolled the telephone in front of the Plaintiffs cell door. The plaintiff, a disabled American had to make the telephone call while sitting on a concrete floor. Reiterating that jail staff have been informed on a near daily basis that the plaintiff was in fact, disabled, and had multiple spinal surgeries, including a failed fusion. Gordon v. Cnty. of Orange, 888 F.3d 1118, 1124-25 (9th Cir. 2018) ("we hold that claims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard") (extending Castro); Sandoval v. Cnty. of San Diego, 985 F.3d 657 (9th Cir. 2021) (applying Gordon to nurses' alleged failure to provide proper care to pretrial detainee); Gordon v. Cnty. of Orange, 6 F.4th 961 (9th Cir. 2021) (reiterating objective standard). The Ninth Circuit has now held "pre-trial detainees do have a right to direct-view safety checks sufficient to determine whether their presentation indicates the need for medical treatment." Gordon, 6 F.4th at 973. While there is "no § 1983 liability for simply acting contrary to prison policy," the standardized medical procedures of a prison can "help to underscore" that prison officials "had access to facts from which a reasonable person would infer" that a particular patient "was at serious medical risk." Russell v. Lumitap, 31 F.4th 729, 742 (9th Cir. 2022).

47. Corrections Officer Brown forced the plaintiff to sit on a concrete floor and make a phone call, having to extend her body to reach the phone from the floor.

48. The plaintiff Immediately contacted her family and informed them that Iwas experiencing a medical emergency and that the facility was refusing to render medical treatment

49. The plaintiffs mother was on the phone with me as correctional officer Brown mocked and disregarded the plaintiffs cries for assistance.

50. The plaintiffs mother is witness to the fact that Officer Brown that put on notice that he was in violation of the Americans with disabilities act and that he had a responsibility to render medical care.

51. In a jail recorded phone call, Officer Brown, laughed, mocked the plaintiff again and walked away.

52. The plaintiffs mother also recorded as numerous attempts were made to summons for help using the emergency button in the room.

53. When corrections officers answered, the plaintiffs mother was witness and recorded the fact that they disregarded her pleas for medical assistance and the fact that they were violating the Americans with disabilities act.

54. For hours while the plaintiff lay in medical distress, Officer Brown harassed the plaintiff through the glass in the door.

55. Corrections Officer Brown was documented as he would place his face against the glass, make

56. Officer Brown repeatedly harassed the plaintiff, while she was encountering, a medical emergency. Officer Brown was recorded on in-house security cameras, making faces at the Plaintiff, calling her crazy, and refusing to provide the plaintiff with a nurse, physician or medical treatment.

57. There were repeated requests for reasonable accommodation made to corrections, Officer Brown, which were disregarded.

58. Officer Brown was documented as stating "You have reasonable accommodations, a bed, a toilet and a shower, now shut up."

59. After nearly 4 hours of begging for help, the other inmates in the surrounding sells rallied to get the Plaintiff appropriate Assistance. They all began yelling and hitting their call buttons and demanding that the correction officer get a nurse Alexander v. Nguyen, 78 F.4th 1140, 1144 (9th Cir. 2023), the Ninth Circuit noted that "the law governing pretrial detainees' claims of inadequate medical care and other dangerous conditions of confinement is still developing in the wake of the Supreme Court's decision in Kingsley v. Hendrickson, 576 U.S. 389 (2015)." The court added that under the third element discussed in the 2018 decision in Gordon, "[t]he plaintiff must 'prove more than negligence but less than subjective intent—something akin to reckless disregard.'" Alexander, 78 F.4th at 1145 (quoting Gordon, 888 F.3d at 1125)

60. During which time, the plaintiffs attorney and my family also called the facility demanding that they provide assistance.

61. After four hours, a nurse finally arrived at the Plaintiffs cell door. The only assistance that this nurse provided was by taking her blood pressure. Her blood pressure was elevated to a level of 159/105. She ignored the fact that the plaitniff was experiencing symptoms of not just a heart attack, but an additional stroke. She rendered absolutely no medical care.

62. Around the time of shift change, which was 7 PM, and additional nurse came to the plaintiff's cell door. She was accompanied by a staff member who also refused to provide the plaintiff with a means to communicate and a telephone

63. The members of the Guadalupe county detention center staff had deliberately cut off communication so that the plaintiff could not communicate with her family, to her attorneys and to prevent her from retrieving medical care.

64. After a lapse of nearly 4 hours, the staff nurse also took the plaintiffs blood pressure which was again at an elevated level which constituted that of a heart attack/stroke. The plaintiff was noted, begging for Emergency care.

65. Documentation shows that stated that the nurse advised she would call the physician, but refused to have me transported to an emergency room.

66. This was a true medical emergency and the staff within this facility refused to comply with state and federal law, ignoring what was a life-threatening condition.

67. The staff at this facility was ignoring the fact that my family had also arrived at the facility to check on the Plaintiffs welfare.

68. The staff had attempted to refuse visitation and for the Plaintiffs family to check her welfare.. The nurse that was attending to me made threats that she was going to put the plaintiff in a padded cell within the medical portion of the facility.

69. The nurse, who refuse to provide the plaintiff with her license number and name made the statement, "you won't have a choice if Itell you to go there."

70. Repeatedly, the Guadalupe detention center staff ignored a medical condition/emergency. Placing someone in a padded cell, and solitary confinement, where they are forced to urinate and defecate in a hole constitutes as cruel and unusual punishment.

71. The plaintiffs mother reiterated to the jail staff that her immediate release had been ordered through a Hamilton county judge.

72. There is evidence to show that the plaintiff had been released, yet the staff within the detention center, yet they chose to keep the plaintiff contained in solitary confinement, while experiencing a medical emergency.

73. After threats of legal action from the Plaintiffs family, the staff opted to take the plaintiff to the nurses station were they again took her blood pressure. Her blood pressure was taken two additional times where the levels kept increasing.

74. Around 10:30 PM, there was a spike in the plantains blood pressure. Her blood pressure around this time had elevated to the point of 160/109.

75. Medical documentation confirmed that the plaintiff had an additional heart attack and a stroke. Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1070 (9th Cir. 2016) (en banc), the Ninth Circuit overruled Clouthier v. County. of Contra Costa, 591 F.3d 1232, 1253-54 (9th Cir. 2010), "to the extent that it identified a single deliberate indifference standard for all § 1983

76. The plaintiff sustained multiple injuries, which includes permanent blindness in her left eye due to the staffs failure to render medical care.

77. There is irreversible damage to the plaintiffs heart, coordination, manual, dexterity, speech, and memory. There is irreversible damage to coronary muscles and heart.

78. " Gates v. Rowland, 39 F.3d 1439, 1446-47 (9* Cir. 1994) (upholding discriminatory policy on ser comedia, 118 - 308 168. 17/47 (sir: 1997

79. As in Estelle v. Gamble 429 U.S. 97 (1976- the plaintiff has shown overwhelming evidence of deliberate indifference to serious medical needs. Sheriff Arnold Zwicke, the Guadalupe county detention center correctional officers, and medical staff failed to provide appropriate care for the plaintiff disabilities

80. At no time was a supervisor present, as Officer Brown deliberately put the plaintiff in torturous conditions that caused permanent injury

## Violations of title II of the Americans with disabilities act and section 504 of the rehabilitation act

- Sheriff Arnold Zwicke is not entitled to Eleventh Amendment sovereign immunity from a jail prisoner's claim under Title II of the Americans with Disabilities Act, 2 U.S.C. 12132, prohibiting disability discrimination in the providing of government services and programs. The statute unambiguously abrogates such immunity.

- While incarcerated, the plaintiff was injured, and the medical staff placed her in a special cell where she enjoyed fewer privileges than other inmates.
- Upon reviewing the inmate handbook, is specifically states that a medical examination is mandatory and is based upon physical ability. Disabled detainers are deliberately discriminated against and prohibited from activities and employment involving the trustee program.  Exhibit I

- Disability discrimination in employment under Title II of the Americans with Disabilities Act (ADA). A federal appeals court upheld summary judgment for the defendants, ruling that Title II of the ADA is inapplicable to a claim of employment discrimination by a prisoner in a prison.
- The plaintiff is " qualified" with a disability.  The staff members at the Guadalupe County detention center failed to acknowledge federal law that states; " with or without reasonable modifications to rules, policies, or practices, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity. 42 U.S.C. § 12131(2)." See, e.g., Harris v. Thigpen, 941 F.2d 1495 (11* Cir. 1991), appeal after remand, Onishea v.

Hopper, 126 F.3d 1323 (11" Cir. 1997), rev'd, 171 F.3d 1289 (11" Cir. 1999
Black v. Wigington, #15-10848, 2016 U.S. App. Lexis 1057 (11th Cir.).


## Reasonable Accommodations

- In order to prevent discrimination against people with disabilities, the ADA and the Section 504 require that prisons provide "reasonable accommodations" to allow a person with disabilities to fully and equally participate in a program, service, or benefit.

## Exhaustion of Administrative Grievances

The Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(a), requires that prisoners file a grievance and pursue all available administrative appeals before he or she can bring a federal lawsuit. This requirement applies to the ADA and the Section 504, as it does to other federal laws.

The plaintiff followed the Guadalupe County detention centers policy for filing and appealing grievances, including all deadlines and time limits.
Documenting in detail, grievances for each claim ) brought against each wrong-doer (or defendant).
The plaintiff was specific and detailed with the limited space allotted for each grievance. Sighting dates, names In the violation of rights, Or acts of wrongdoing that occurred.
The plaintiff was denied her right to appeal.

## Accommodation:

- There is a well established and documented pattern Incident to where violations of the Americans with disabilities act and constitutional rights were noted and brought to not only the staff, but supervisors attention.
- The plaintiff was clear and her request and need for Accommodations associated with the Americans with disabilities act and identifying as a disabled person
- In each written, grievance and request for accommodation, the reviewing supervisor denied each request

## Additional Discrimination Based Upon Gender

Male prisoners are provided with work assignments as a "Trustee's." These are typically janitorial, maintenance, and food service assignments. The plaintiff filed a grievance given that disabled detain these we're not eligible given that there was a medical examination that would exclude detains, which includes the plaintiff who have physical disabilities. A grievance was also filed for discrimination based upon sex and gender. The plaintiff was denied a position as a trustee that the Guadalupe County detention center only accepts male inmates for their trustee program. They exclude female inmates from the benefits that come with this program. There are a number of benefits, which includes an additional day of served time. 3/1 days. Female inmates should be eligible, but are deliberately excluded.)

## Additional violations of the 14th amendment pursuant to 42 U.S.C€ 1983 failure to train or supervise.

- The Fourteenth Amendment reads, in part, "No State [can] deny to any person within its jurisdiction the equal protection of the laws." The Fourteenth Amendment, in conjunction with the ADA, ensures that prisoners with disabilities have the means with which to protect their rights..

1. For over 48 hours, Plaintiff was held in a cell within the book- in area. The plaintiff can attest to the fact that the conditions within this area were beyond inhumane. The correctional staff knowingly and intentionally created inhumane conditions and promoted cruel and unusual punishment. Immediately booked in, the plaintiff identified herself as a disabled American and informed staff of significant medical concerns, as well as the fact that she was in need of medication's and was at the time of in extreme pain.

2. Repeated grievances were filed reference violations to the Americans with disabilities act, and refusal to provide the plaintiff with access to the courts. For 27 days, the plaintiff deprived of access to their attorney, proper clothing, and adequate medical treatment

3. Establishing a pattern of cruel and unusual treatment, The correctional staff deliberately kept the book-in at a temperature that is so excessively low, that many inmates lose feeling of body parts, shivering, losing the inability to rest and having to huddle together with strangers in order to maintain some warmth. Areas of the plaintiffs, head body, upper and lower extremities, had turned purple because of the freezing conditions.

4. Plaintiff experienced symptoms of illness upon being moved, which included fever, sore throat and cough. Staff refused to provide proper clothing, increase the temperature to a humane level when being repeatedly asked, nor did they provide reasonable accommodation to the plaintiff, who had requested reasonable accommodation due to complications from a stroke in 2016, and in accordance to the Americans with disabilities act.

5. The jail staff unlawfully maintained the plaintiff within this area beyond a 48 hour period. As the Plaintiff vocalized grievances as the conditions were causing unnecessary pain and suffering, the staff would deliberately lower the temperatures. Prisoners were being

removed from their cell, by staff, forcing them to take cold showers, then returning them to the freezing conditions.

6. Within this 48 to 72 hour period of unlawful detainment, the plaintiff was provided with meals that were expired. Plaintiff was provided with rotten bologna sandwiches and a pre-package container of four small cookies.This facility had not provided any sort of nourishment, or nourishing meals, or specialize meals. The plaintiff made it known that she is gluten and lactose intolerant.

7. When making a request, per the Americans with disabilities act, the plaintiff was denied of any and all reasonable accommodation by the staff.

8. The staff knowingly and intentionally violated federal law and laws created an enforced by the federal government to protect those with disabilities. The correctional officers the Guadalupe County detention center had no understanding of what the term reasonable accommodation meant in terms of the Americans with disabilities act

9. Sheriff Arnold Zwicke has failed to provide his staff members and correctional officers with training as a pertains to the Americans with disabilities act, reasonable, accommodation, medical treatment, devices, medications, etc. The plaintiff brought to the attention of a correctional officer that they were in violation of the Americans with disabilities act after requesting reasonable accommodation, and the correctional officer in the booking area stated "I know."

10. Plaintiff was told by the staff, "We don't do that here." Defendant, Arnold Zwicke and the corrections officers under his command with the Guadalupe county detention center, were in violation of federally protected rights, provided inadequate training for employees; causation between the inadequate training and the plaintiff's injuries. Canton vs, Harris; "Failure to provide training to municipal employees resulted in the constitutional deprivation . . . are cognizable under § 1983 . . . [only when the] city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." 489 U.S. at 392

11. During the plaintiff's time of unlawful detainment, she was informed that she to be scheduled for an extradition hearing for an alleged warrant, that was unknown to the plaintiff. This warrant was over six years old from a state that the plaintiff had not resided in for over six years.

12. Upon the plaintiff's arrival to the facility, and within a few hours, the plaintiff was coerced into signing a sworn document, providing my information, identity to confirm that she was to be extradited to the state of Indiana.

13. The plaintiff was told by a corporal within book-in that she would see a judge for a hearing on extradition within 24 hour.

14. At no point during the 27 days that the plaintiff was unlawfully detained was she ever provided with a hearing, or even information, date, or time of a hearing. Fourteenth Amendment, Section 1  All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

15. The plaintiff filed numerous grievances demanding my extradition documents that she signed and information reference a hearing, court date and time.

16. The staff, and the administration, refused to provide the plaintiff with these documents and refused to provide her with a schedule date for a hearing.

17. Mathews v. Eldridge, 424 U.S. 319, 333 (1976). Parties whose rights are to be affected are entitled to be heard. Lindsey v. Normet, 405 U.S. 56, 65–69 (1972). However, if a person would suffer too severe an injury between the doing and the undoing, he may avoid the alternative means

18. Plaintiff was told and threatened by the staff repeatedly that they could hold her for as long as they wanted to

19. Evidence will show that the plaintiff filed two sets of documents consecutively requesting a court appointed attorney

20. Those documents were never processed  by the staff, and the plaintiff was never provided with any sort of legal representation from the state of Texas

21. Access to speak with, or obtain an attorney was repeatedly denied. Filed grievances prove this. Repeatedly, the plaintiffs right to due process and the right to an attorney was violated. Exhibit C

22. The staff within this facility knowingly and intentionally violated the plaintiffs right to an attorney. They refused to allow her access, phone calls, and contact information to attorneys that would be able to obtain my extradition documents and to confirm whether an actual hearing had been scheduled. Exhibit C and C2

23. While walking the plaintiff down a hallway within the correctional facility, a Guadalupe county detention center staff member shackled the plaintiff with heavy chains. Her hands were handcuffed in the front, with chains leading down to her feet. Her feet had shackles that limited her range of motion and movement. The positioning, weight and pressure of the shackles and chains caused extreme pain. The plaintiff was noted as crying, doubled over in extreme pain and begging the staff member to remove the shackles. The plaintiff was ordered to walk nearly an entire length of the Guadalupe County detention center shackled with these heavy chains, making it known to the correctional officer that the

pain she was causing was . The plaintiff posed no threat, and was detained on a misdemeanor, nonviolent warrant that was over 6 years old. Eerola v, Moran. 622 F.Supp. 814, 820 (D.R.I. 1985). Thus,

24. "as is generally true in Eighth Amendment analysis, the individual circumstances surrounding a challenged measure, including its duration and the objective sought to be served, weigh heavily."

25. Id at 821 (holding that the Eighth Amendment was violated

26. This officer deliberately ignored the plaintiffs request for clean clothing, When the plaintiff attempted to speak with staff member Reyes, she would deliberately ignore the plaintiff and walk away.

27. The plaintiff has evidence to show that she filed two grievances and additional complaints of abuse against Officer Reyes.

28. After being reprimanded, Officer Reyes entered the cell to confront the plaintiff. Reyes, threw a wad of clothing at the plaintiff while she was sleeping.

29. The undergarments that Reyes threw at the Plaintiff showed evidence of fecal matter and menstruation remnants

30. She provided the plaintiff with uniforms that were soiled, unlaundered with, sizes that were excessive and not an appropriate fit

31. When the plaintiff would walk in the oversize clothing, her pants would fall below my waist.

32. There was an established pattern of forcing inmates to wear soiled, stained, worn and inappropriate uniforms. This facility is knowingly intentionally creating health hazards to others, by forcing them to wear clothing and undergarments that are soil with feces and blood and that are not being laundered appropriately Exhibits D-D4

33. On December 5, the plaintiff filed additional grievances in reference to violations of her constitutional rights and demanded information on extradition, her release, as well as the date and time of this alleged hearing. Exhibit E and E2

34. An employee who identified herself only as Hannah, with the Guadalupe County Jail administration came to the plaintiff's cell and made the false claim that she had filed for a hearing.

35. The plaintiff demanded that she be provided with the date and time, which she then stated, "I can't provide you with it for security reasons."

36. The plaintiff had the right to have counsel present during any legal proceedings or hearings.

37. Plaintiff informed "Hannah" with the Guadalupe County Jail administration that she was violating her constitutional rights and that she had a right to know the date and time of any proceedings and to inform counsel so that they could be present.

38. A zoom meeting with a judge from Hamilton County Indiana was ordered to address the alleged warrant and extradition that had been denied by Guadalupe county detention center..

39. The Honorable Judge Hughes with a Hamilton county superior court, demanded the plaintiffs immediate release.

40. The Guadalupe county detention center refused to comply with the judges orders and to process the proper paperwork for the plaintiffs immediate release. Given that they had violated this judges orders and refusing to release, the plaintiff filed multiple grievances. Exhibit F

41. After exercising her first amendment right, the plaintiff was punished unjustly and removed from the cell.

42. The plaintiff was unjustly punished and placed in solitary confinement, where she was denied access to all outside communication, including a telephone and a means to contact an attorney. Exhibit F

43. Multiple grievances were filed on December 5th, 2021 after being placed in solitary confinement as a malicious and deliberate act of retaliation. Retaliatory acts against the plaintiff for filing grievances and informing others of their rights and the rights that were being violated. These agreements has consisted of deliver violations of rights and being punished unjustly and maliciously . These grievances also consisted of having severe chest pains, numbness and tingling in her face, arms and hands, which were indicators of stroke. These grievances were disregarded by the Guadalupe county detention, correctional officers, which included officer Brown. The Guadalupe County detention center has refused to provide return copies of those grievances. Exhibit G

## ADDITIONAL CONTINUED VIOLATION
## DOCTRINE -STATUTE OF LIMITATIONS

- The original complaint and record to the clerks office will show that this complaint was mailed via certified mail prior to the statute of limitations. The plaintiff Is not authorized to file electronically for this court. The plaintiff is at the mercy of the US Postal Service, as well as their holiday schedule, as this also includes the closing of courts and court offices for a federally recognized holiday. During the time of mailing, many government offices and courts were closed and short staffed in recognition of the holiday and it's established schedule, causing a delay in filing.

- Exhibit G  Shows the US Postal Service tracking number and date of mailing, which was prior to the statute of limitations. The plaintiff attempted to file this electronically, but was denied and was not granted access to the system.
- The continued violation doctrine can be applied in the sequence of events that took place after the unlawful detainment- traffic stop conducted by Joel Hawk on November 11, 2021. This was a series of continued unlawful acts. The defendants wrongful conduct continued after the precipitating event that occurred to begin the pattern of misbehavior. Injury accrued after the initial event and the continued events. Continued injury to the plaintiff, was avoidable had the defendants ceased their wrongful conduct.
- The application of the continued harm doctrine in this case is suitable as the Guadalupe county detention center and sheriff Arnold Zwicke displayed continuing unlawful acts.
- The original active harm began on November 11, 2021 where they continued on a daily basis until December 5, 2021. Continued to act of harm, harassment, threats, intimidation, additional violations to the Americans with disabilities act, repeated violations to the 8th and 14th amendments were applied.
- The plaintiffs fourth amendment rights were violated by this same new Braunfels police officer on December 23rd, 2021, where the plaintiff was again unlawfully detained at the Guadalupe county detention center under false arrest. (Bays v. New Braunfels Police Department.)
- The same wrongful acts in regards to violations of the Americans with disabilities act or committed by Guadalupe county sheriff's Department correctional officers, reoccurring on December 23, 2021.
- The plaintiff was again denied medical treatment and medications.
- The plaintiff specifically asked for reasonable accommodation in the form of a mat to sit on given that she had a history of spinal issues, with six spine surgeries and a failed fusion. The plaintiff also had Been deprived of her pain medication's by the new Braunfels Police Department and was not provided with any medication by the Guadalupe county detention center. The plaintiff express that she was in extreme pain.
- The correctional officer working in the booking area repeatedly denied the plaintiff of reasonable accommodation, medical treatment, and medication's.
- The plaintiff made it known to correctional officers that she was experiencing chest pain, had numbness and tingling on the left side of her face, through her left arm and hand. The plaintiff made it known that her blood pressure was elevated and that she needed medical assistance. She was denied.
- Additional detainees, who were placed in the same cell as the plaintiff had to yell and scream in order to obtain the correctional officers attention, while the plaintiff was having an active stroke.
- After several hours, the plaintiff was approached by the staff nurse, who refused to provide her identification. And was noted as wearing her name badge backwards so that it could not be read
- The plaintiff blood pressure was taken to where it was at an extremely elevated level. At one reading, the plaintiffs systolic blood pressure was over 200. While the plaintiff was exhibiting clear signs and indicators of a stroke, she was denied access to a physician, and emergency facilities for treatment.

- The nurse and correctional staff threatened the plaintiff with solitary confinement while she was having an active stroke. The nurse specifically stated to a correctional officer, "throw her in the padded cell."
- Other detainers had to monitor the plaintiff given that the correctional officers deliberately and maliciously refused all medical treatment.
- The plaintiff was released on December 24, 2021, where she was seen at a locally emergency room. A CT scan was conducted, which confirmed that stroke had occurred.
- The statute of limitations will be tolled to the last date on which a wrongful act is committed. Henry v.Bank of Am., 147 A.D.3d 599, 601 (1st Dept. 2017).
- The plaintiff filed a formal complaint for abuse, violations of the Americans with disabilities act, and constitutional rights with sheriff Arnold Zwicke which was received January, 2022.
- The plaintiff received "reply all" emails from the commanding staff for the Guadalupe County detention center, who made it known that they had no intentions of looking into the matter, or investigating given that they had not heard from an attorney representing the plaintiff
- The incident was to be investigated by an unbiased entity outside of the Guadalupe county sheriffs department jurisdiction. This matter was to be investigated by the Texas state police. The matter was assigned to Texas state police investigator -Seguin division, Conde Benoist.
- On January 6th, 2022, the plaintiff obtained a recording from her Ring doorbell camera, showing two white males, attempting to make contact with her around 9:20 a.m.
- In the video, two law enforcement officers can clearly be identified. Both displaying badges from their respective agenies and carrying firearms on their person. One of which, was identified later as detective Conde Benoist. While the other officer can only be identified by his uniform and sheriff's department badge displayed on his waistline. Exhibit
- The Ring doorbell recording showed that both officers arrived at the plaintiffs residence in the same vehicle. An unmarked pick up truck, with no agency markings or insignia.
- Detective Benoist would have had a valid and lawful reason to be at the plaintiff home address if it was his intent to interview her regarding the formal complaints filed against the Guadalupe county detention center.
- There was reason for concern regarding the plaintiffs safety as two law enforcement officers, (from the same county (Seguin) in question with this civil complaint) arrived at her private residence without first providing our client notice, or requesting an appointment. One officer actively employed with the agency being investigated,( the Guadalupe County Sheriff's department). This is the same agency the plaintiff was abused and tortured by.
- The Ring video recording showed that a sheriff's badge is clearly visible, as was a body-worn camera on the Sheriffs Dept. Officer's chest. This officer was also wearing a uniform that can clearly be identified as that of a Guadalupe County Sheriff's department Deputy. At no time did the plaintiff authorize this interview, or for officers to enter upon her private property, or dwelling. Nor, did our plaintiff provide consent to be recorded, or to have potentially the interior of her home recorded by officers body worn cameras.

- The " investigation" show to be biased given that it was being conducted by the Seguin division Texas state police and a representative from the Guadalupe County sheriff's department. Members of the (Seguin division) Texas State police have a known and existing relationship with the Guadalupe County sheriff's department and the Guadalupe County detention center. The Texas State police failed to conduct a proper, thorough, and unbiased investigation.
- The ring doorbell camera captured the deputy from the Guadalupe county sheriffs department reaching for his handgun, which was holstered on the right side of his hip. This officer showed that he had the motivation and intent to use lethal force on the plaintiff if she opened her door. The officer was recorded unsnapping and attempting to unholster his weapon for no deliberate reason or threat. Exhibit H
- The plaintiff, out of fear that she would be shot if she opened her door, opted to retain a civil attorney to communicate with the Texas state police, detective Benoist.
- A formal letter of representation was sent to the Texas State police, attention Detective Benoist, along with a request for investigation. This detective failed to respond and refused to investigate the matter.
- In May 2022, the plaintiff was threatened and harassed by Guadalupe County Detention Center, Officer Brown. The plaintiff encountered officer Brown at a public facility (planet fitness), located in new Braunfels, Texas. Without provocation, Officer Brown approached the plaintiff and began making harassing and obscene gestures and comments. Witnesses and staff member can and will attest, to lude and vulgar behavior. Quoted as saying, "I own you" to the plaintiff. As the plaintiff would walked away from Officer Brown, he followed. The plaintiff made a formal complaint of harassment against Brown with Planet Fitness management. Due to fear for her personal safety and further retaliatory acts, the plaintiff canceled her membership and did not return to that facility.

## Additional violations of the 14th amendment pursuant to 42 USC 1983 failure to train or supervise

- Plaintiff incorporate the foregoing paragraphs as if set forth herein.
- Plaintiff also brings claims for Guadalupe County's deliberate failure to train and/or supervise their Jail employees which resulted in the violation of Plaintiffs' constitutional rights.
- For a failure to train claim, Plaintiffs must show (1) the training policy and procedures were inadequate; (2) the County was deliberately indifferent in adopting its training policy and procedures; and (3) the inadequate training policy and procedures directly caused the constitutional violation.
- As shown above, Guadalupe County and its policymaker, Sheriff Zwicke, have been aware of the Jail's rampant culture of violence, excessive use of force, lack of medical care, and lack of observation for many years; yet, despite being made aware of their deficiencies, Sheriff Zwicke has continued with the same training policies and practices and has not implemented new policies or practices that would correct the failure of the

Jail employees. These issues have not been addressed by any Guadalupe County Sheriff

- The Guadalupe county sheriffs Department has an established and known pattern of misconduct, unlawful acts, and detainment. They have been the subject of multiple lawsuits for civil rights violations, which includes: Foreman et al v. Guadalupe County Sheriff's Department, Graves v. Zwicke, Brady v. Christian, Jessica-Ann Tijerina v. Zwicke, JORDAN BAUTISTA-GUNTER v Robert Hernandez (Guadalupe county jail administrator) Arce v. Zwicke, Hemphill v. Zwicke, Goad v. Guadalupe county. All cases regarding civil rights violations committed while detained at the Guadalupe County detention center/Arnold Zwicke.

- The plaintiff suffered continued and repeated injury/ harm due to continuous, malicious acts and violation of constitutional rights. The Guadalupe County sheriff, Arnold Zwicke and the Guadalupe County detention center have an established and well-known pattern of misconduct and violations of rights, showing proof of deliberate indifference. They have shown deliberate indifference by specifically targeting minorities in highly publicized cases from 2014 to recent months. This includes a recent case involving a Guadalupe County Detention Officer Ashley Morales, who was employed by the Guadalupe County Adult Detention Center, was arrested today for Violations of the Civil Rights of Person in Custody, Improper sexual activity in custody or under supervision. She was arrested by Guadalupe County Investigators and Texas Rangers. She was booked into the Guadalupe County Jail on a $50,000 bond.

- In a malicious act of retaliation, the jail staff placed the plaintiff in solitary confinement. During this confinement, the plaintiff began to experience symptoms of a heart attack. Plaintiffs heart rate was elevated, she began sweating profusely and was having chest pains. In 2013, the U.S. Department of Justice found that the Pennsylvania prison system violated the ADA with its use of solitary confinement for prisoners with serious mental illness. As in Taylor v. Stevens, "Any reasonable officer should have realized that the plaintiffs conditions of confinement offended the Constitution," "No reasonable correctional officer could have concluded that, under the extreme circumstances of this case, it was constitutionally permissible to house the plaintiff in such deplorable conditions for such an extended period of time," The plaintiff was confined in unconstitutional conditions and were deliberately indifferent to her health and safety in violation of her Eighth Amendment rights. After Brown's conduct violated the plaintiff's constitutional rights and that these rights were clearly established at the time of the alleged violation.

## Sheriff Arnold Zwicke/Guadalupe county sheriffs department

- Guadalupe county County refused to reasonably modify its policies, practices, or procedures to ensure Ms Bays access to the facilities, services. programs. or

activities of the Jail by reasonably accommodating her known disabilities including failing to provide full treatment and being deliberately indifferent to her medical condition

- County Sheriff is the Policymaker for the County Jail
- Under well-established Texas law, the Guadalupe County Sheriff is the final policymaker for the Guadalupe County Jail for the purpose of holding the County liable under § 1983
- The Sheriff position regardless of the individual holding that position is the policymaker
- Sheriff Arnold Zwicke was elected as the Sheriff of Guadalupe County during the time of incident with specific responsibilities over the Guadalupe County Jail.
- Sheriff Arnold Zwicke was the policymaker when Plaintiff suffered her injuries

- Sheriff Arnold Zwicke is not entitled to Eleventh Amendment sovereign immunity from a jail prisoner's claim under Title II of the Americans with Disabilities Act, 2 U.S.C. 12132, prohibiting disability discrimination in the providing of government services and programs. The statute unambiguously abrogates such immunity..

**WHEREFORE, PREMISES CONSIDERED, PLAINTIFF, OLIVIA BAYS prays that the motion to dismiss be denied and for such other and further relief as she may show that she is justly entitled to.**

Respectfully submitted,

Olivia Bays
6161 El Cajon Blvd. 805 San Diego, CA 92115
619-886-7315
O.bays@protonmail.com

CERTIFICATE OF MAILING

I, do hereby certify that I have mailed this day by U.S. Certified Mail, postage prepaid, a true and correct copy of the above and foregoing response to motion to dismiss. .

Complaint filed by Plaintiff to:
Law Office of Allison, Bass and McGee LLP
Attn: Eric Magee
Susana Naranjo-Padron
1301 Nueces St. Suite 201 Austin, TX 78701
512-482-0701
EXHIBITS A-I

# INMATE REQUEST FOR INFORMATION

Do not use this form for Property Releases, Grievances, Complaints or Sick Call

| Name: Olivic Bays | S.O. ID # 213156 | Date: 11-21-21 | Cell: F- D-17 |
|---|---|---|---|

Circle one (1) section only or request will be voided

| Shift Commander | Commissary | Classification | Other: |
|---|---|---|---|

**Request:** Requesting information or form on a grievance for civil rights / constitutional rights violation

**Response:**

## Exhibit A

| | Information Provided By: Olivic Bays | |
|---|---|---|
| Inmate's Signature (Sign at the Time of Request | Section: D-17 | Date: 11-21 |

GCADC FORM 1600.0

# Exhibit B

## Guadalupe County Adult Detention Center
### Inmate Grievance Form
### Case: G21-0758

Date: 11-24-21                    Cell: B18

Inmate Name: Bays, Oliver                    SO#: 213150b.

Incident Date: 11-24-21          Time: 4Am   Location: B-18

1) **Must be filed within 72 hours of the incident.**
2) **Only the below items are grounds for a grievance.** Indicate which item you are filing under by checking the box next to the definition.
   - **☑ Violation of civil rights-** A civil rights violation is an action or in action based on race, age, religion, sex, physical or mental disability, sexual orientation or national origin.
   - **☐ A criminal act-** An act committed in violation of law where the consequence of conviction by a court is punishment, especially where the punishment is a serious one such as imprisonment.
   - **☒ Unjust denial or restriction of your privileges-** An act where everybody else was allowed a privilege but you were not without cause.
   - **☐ Prohibited act by staff on duty-** A staff member is doing something that is prohibited by facility plans and policies.
3) **For any issue not listed above you need to attempt to resolve with your unit officer. If they cannot resolve the issue, write a request form to the supervisor of the area you are having issue with.**
4) **If you file a grievance and classifications rejects it as not a grievance, you can appeal to have a supervisor review that decision. See handbook for details.**
5) **Only file one issue per grievance, if multiple issues on a grievance it will be rejected.**

Be as detailed as possible to assist the grievance officer in investigating your grievance. You need to include date, time, who was involved, how it happened. If you do not provide good details we cannot conduct an investigation.

On 11-23-21 at 11pm, I was transferred from D-n to B-18. The staff has a responsibility and an obligation to inform the medical staff of such change, to ensure proper care in the case of injury, emergency and to ensure that there is no lapse in care, or proper ADA accommodation. During morning round, I was denied proper care & medication by staff and medical personnel. My medications for significant medical issues was not provided, causing a lapse in care. This in turn caused unnecessary pain & suffering. I have been repeatedly denied proper medications & care for my spinal issues, nerve damage & multiple herniated discs. I have been forced to carry my own mats and issued articles, which is against my physicians surgeons orders and is a clear violation of ADA I require...

accomodation. Your staff and medical staff has received federal mandated training of persons who are disabled and that require reasonable accomodation, care and medication. Non-compliance with these federal laws is not only unethical, immoral but illegal. Your staff/medical personel is required to provide me with proper medical care. You have cause unnecessary pain & suffering with your negligence and violation of ADA & federal law. My medications have yet to be distributed, causing a significant lapse in care.

Inmate's signature: _____

Proposed Solution to issue: I will be filing with the DOJ and you will be receiving a notice of tort from my civil attorney for civil rights violation.

•••••••••••••••••••FOR OFFICIAL USE ONLY DO NOT WRITE BELOW THIS LINE•••••••••••••

Date Received: 11-24-21     Interim response to inmate: 11-24-21

Answer provided to inmate: _____

__/__ Investigated By: Medical Supervisor

_____ Referred to: _____

_____ Rejected (include rationale for rejection in response section)

_____ No Action required (include reason in response section)

_____ This is not a Grievance

GRIEVANCE SUMMARY RESPONSE AREA:

G81- 0758 pending

# Exhibit B2

Responding Staff Member: _____     Date Answered: _____

# Guadalupe County Adult Detention Center

## Exhibit C
### Inmate Grievance Form
Case: _G21-0754_

Date: _11-21-21_  Cell: _D-17_

Inmate Name: _Olivie Bays_  SO#: _2015-06_

Incident Date: _____ Time: _____ Location: _____

1) <u>Must be filed within 72 hours of the incident.</u>
2) <u>Only the below items are grounds for a grievance.</u> Indicate which item you are filing under by checking the box next to the definition.

☑ Violation of civil rights- A civil rights violation is an action or in action based on race, age, religion, sex, physical or mental disability, sexual orientation or national origin.

☐ A criminal act- An act committed in violation of law where the consequence of conviction by a court is punishment, especially where the punishment is a serious one such as imprisonment.

☑ Unjust denial or restriction of your privileges- An act where everybody else was allowed a privilege but you were not without cause.

☑ Prohibited act by staff on duty- A staff member is doing something that is prohibited by facility plans and policies.

3) <u>For any issue not listed above you need to attempt to resolve it with the officer. If they cannot resolve the issue, write a request form to the supervisor of the area you are having issue with.</u>
4) <u>If you file a grievance and classifications rejects it as not a grievance, you can appeal to have a supervisor review that decision. See handbook for details.</u>
5) <u>Only file one issue per grievance, if multiple issues on a grievance it will be rejected.</u>

**Be as detailed as possible to assist the grievance officer in investigating your grievance. You need to include date, time, who was involved, how it happened. If you do not provide good details we cannot conduct an investigation.**

On 11-17-21 I submitted a request to the _____ requesting to have access to my phone to obtain the numbers for an attorney in _____ as well as in Texas. In the request I also _____ obtaining the _____ of my mother _____ point of contact to arrange communication between myself & prospective attorneys willing to accept my case as legal representation. Who didn't _____ also _____ with the request as present for _____ which has been _____ on 11-18-21 I received a request from to _____ this _____ who denied my request for access _____ _____ I resubmitted the request on 11-17-21 _____ but left the _____ _____ for 5 pt 9. Under these _____

# INMATE REQUEST FOR INFORMATION

Do not use this form for Property Releases, Grievances, Complaints or Sick Call

| Name: Olivia Bavis | S.O. ID # 213150 | Date: | Cell: F- |
|---|---|---|---|

Circle one (1) section only or request will be voided

| Shift Commander | Commissary | Classification | Other: |
|---|---|---|---|

**Request:** Requesting access to my property to obtain 2 phone numbers; my mother & attorney in Indiana. I also need access to the credit card in my property to make payment for legal services

**Response:** Denied You were given the opportunity when you were in Booking to get number.

| | Information Provided By: Olivia Bays |
|---|---|
| Inmate's Signature (Sign at the Time of Request | Section: D | Date: |

3:10 Pm

Exhibit C2

GCADC F    806

# Exhibit C 3

## Guadalupe County Adult Detention Center
### Inmate Grievance Form
Case: _G21-0775_

Date: _17-1-12_      Cell: _____

Inmate Name: _____ SO#: _____

Incident Date: _____ Time: _____ Location: _____

1) <u>Must be filed within 72 hours of the incident.</u>
2) <u>Only the below items are grounds for a grievance</u>. Indicate which item you are filing under by checking the box next to the definition.

  ☒ Violation of civil rights- A civil rights violation is an action or in action based on race, age, religion, sex, physical or mental disability, sexual orientation or national origin.

  ☒ A criminal act- An act committed in violation of law where the consequence of conviction by a court is punishment, especially where the punishment is a serious one such as imprisonment.

  ☐ Unjust denial or restriction of your privileges- An act where everybody else was allowed a privilege but you were not without cause.

  ☐ Prohibited act by staff on duty- A staff member is doing something that is prohibited by facility plans and policies.

3) <u>For any issue not listed above you need to attempt to resolve with your unit officer. If they cannot resolve the issue, write a request form to the supervisor of the area you are having issue with.</u>

4) <u>If you file a grievance and classifications rejects it as not a grievance, you can appeal to have a supervisor review that decision. See handbook for details.</u>

5) <u>Only file one issue per grievance. if multiple issues on a grievance it will be rejected.</u>

Be as detailed as possible to assist the grievance officer in investigating your grievance. You need to include date, time, who was involved, how it happened. If you do not provide good details we cannot conduct an investigation.

_The staff / officer within this facility continue to and have repeatedly violated my civil rights ..._

# Exhibit D

## Guadalupe County Adult Detention Center

### Inmate Grievance Form

Case: G21-0779

Date: [illegible] Cell: [illegible]

Inmate Name: [illegible] SO#: [illegible]

Incident Date: [illegible] Time: [illegible] Location: [illegible]

1) Must be filed within 72 hours of the incident.
2) Only the below items are grounds for a grievance. Indicate which item you are filing under by checking the box next to the definition.

- ☒ Violation of civil rights- A civil rights violation is an action or in action based on race, age, religion, sex, physical or mental disability, sexual orientation or national origin.
- ☐ A criminal act- An act committed in violation of law where the consequence of conviction by a court is punishment, especially where the punishment is a serious one such as imprisonment.
- ☐ Unjust denial or restriction of your privileges- An act where everybody else was allowed a privilege but you were not without cause.
- ☐ Prohibited act by staff on duty- A staff member is doing something that is prohibited by facility plans and policies.

3) For any issue not listed above you need to attempt to resolve with your unit officer. If they cannot resolve the issue, write a request form to the supervisor of the area you are having issue with.
4) If you file a grievance and classifications rejects it as not a grievance, you can appeal to have a supervisor review that decision. See handbook for details.
5) Only file one issue per grievance, if multiple issues on a grievance it will be rejected.

**Be as detailed as possible to assist the grievance officer in investigating your grievance. You need to include date, time, who was involved, how it happened. If you do not provide good details we cannot conduct an investigation.**

[illegible]

[redacted]

[illegible handwritten text — several lines]

**Inmate's signature:** _____

**Proposed Solution to issue:** [illegible handwritten text]

[illegible handwritten text]

*****************FOR OFFICIAL USE ONLY DO NOT WRITE BELOW THIS LINE***************

**Date Received:** 12-3-21    **Interim response to inmate:** _____

**Answer provided to inmate:** 12-3-21

_____ **Investigated By:** _____

_____ **Referred to:** _____ # Exhibit D2

_____ **Rejected** (include rationale for rejection in response section)

_____ **No Action required** (include reason in response section)

___/___ **This is not a Grievance**

**GRIEVANCE SUMMARY RESPONSE AREA:**

G21-0779

Multiple complaints on a single form.

# Guadalupe County Adult Detention Center
## Inmate Grievance Form

# Exhibit D3 Case: G21-0759

Date: 11-24-21                      Cell: B 18

Inmate Name: Boys, Olivia _____ SO#: 2131506

Incident Date: 11-23-21 _____ Time: 11PM Location: D-17 / B-18

1) Must be filed within 72 hours of the incident.
2) Only the below items are grounds for a grievance. Indicate which item you are filing under by checking the box next to the definition.

☐ Violation of civil rights- A civil rights violation is an action or in action based on race, age, religion, sex, physical or mental disability, sexual orientation or national origin.

☐ A criminal act- An act committed in violation of law where the consequence of conviction by a court is punishment, especially where the punishment is a serious one such as imprisonment.

☒ Unjust denial or restriction of your privileges- An act where everybody else was allowed a privilege but you were not without cause.

☒ Prohibited act by staff on duty- A staff member is doing something that is prohibited by facility plans and policies.

3) For any issue not listed above you need to attempt to resolve with your unit officer. If they cannot resolve the issue, write a request form to the supervisor of the area you are having issue with.
4) If you file a grievance and classifications rejects it as not a grievance, you can appeal to have a supervisor review that decision. See handbook for details.
5) Only file one issue per grievance, if multiple issues on a grievance it will be rejected.

Be as detailed as possible to assist the grievance officer in investigating your grievance. You need to include date, time, who was involved, how it happened. If you do not provide good details we cannot conduct an investigation.

On 11-24-21, I was moved from D-17, to B-18 dorm at approx 11 PM. Upon arrival to B-18, I was informed by the current residents that their uniforms had already been swapped and they had been issued clean uniforms. I brought this to the attention of the C.O. That transferred me from D-17 to B18. She advised to relay this information to the late shift personelle, (Officer Reyes.) While attempting to speak to Reyes initially, from the window comms system, she chose to ignore me and walked away. I had to take my soiled, dirty uniforms & wait with them until Reyes chose to return for tablet pick-up. At that time I provided her with my size to swap for clean clothing & provided her with my soiled uniforms. Reyes did

not return until after medication. Even then, she did not have clean uniforms for me to change into. A 3rd evening shift C.O. was present during medication pass out. She was also aware that I was being denied my basic human right to clean clothes. She chose to take no action. It is a basic human right to receive clothing that is clean, medical care and to be free of ridicule, humiliation and deprived of basic human and civil rights, even within this state operated facility. I will be filing with the DOJ. The ADA complaints ref these acts are also state or civil litigation is imminent.

**Inmate's signature:** _____

**Proposed Solution to issue:** Treat your residents with respect & dignity that is in compliance with federal law. Provide residents with the even most basic human rights within debate, humiliation, or ridicule. I will be filing lawsuits against this facility for repeated violation to state & federal law.

•••••••••••••••••**FOR OFFICIAL USE ONLY DO NOT WRITE BELOW THIS LINE**••••••••••••••

Date Received: 11-24-21          Interim response to inmate: 11-24-21

Answer provided to inmate: _____

___✓___ Investigated By: Shift 4 Supervisor

_____ Referred to: _____

_____ Rejected (include rationale for rejection in response section)

_____ No Action required (include reason in response section)

_____ This is not a Grievance

**GRIEVANCE SUMMARY RESPONSE AREA:**

G21-0759     pending

# Exhibit D4

**Responding Staff Member:** _____     **Date Answered:** _____

# Guadalupe County Adult Detention Center
## Inmate Grievance Form
### Case: _G21-0775_   Exhibit E

Date: _17-1-2_                                    Cell: _____

Inmate Name: _____ Clint Boyd _____          SO#: _____

Incident Date: _____ Time: _____ Location: _____ B-11A _____

1) <u>Must be filed within 72 hours of the incident.</u>
2) <u>Only the below items are grounds for a grievance.</u> Indicate which item you are filing under by checking the box next to the definition.
   - [X] Violation of civil rights- A civil rights violation is an action or in action based on race, age, religion, sex, physical or mental disability, sexual orientation or national origin.
   - [X] A criminal act- An act committed in violation of law where the consequence of conviction by a court is punishment, especially where the punishment is a serious one such as imprisonment.
   - [ ] Unjust denial or restriction of your privileges- An act where everybody else was allowed a privilege but you were not without cause.
   - [ ] Prohibited act by staff on duty- A staff member is doing something that is prohibited by facility plans and policies.
3) <u>For any issue not listed above you need to attempt to resolve with your unit officer. If they cannot resolve the issue, write a request form to the supervisor of the area you are having issue with.</u>
4) <u>If you file a grievance and classifications rejects it as not a grievance, you can appeal to have a supervisor review that decision. See handbook for details.</u>
5) <u>Only file one issue per grievance. if multiple issues on a grievance it will be rejected.</u>

Be as detailed as possible to assist the grievance officer in investigating your grievance. You need to include date, time, who was involved, how it happened. If you do not provide good details we cannot conduct an investigation.

_The staff / force within this facility continue to_
_and have repeatedly violated my civil rights &_
_Constitutional rights. I have been denied my_
_Constitutional right to access courts, pursuant to_
_its statutes. I have in the past filed a case_
_against officers without recourse or reprimand._
_I've tried to redress I have been_
_denied access Officers feel retaliated by_
_a person who filed. Staff are Unlawfully_
_detaining me in the facility. I am illegally_
_and improperly incarcerated by the Jail_
_medical neglect or deprivation by staff_
_officers. To date, facilities allow no_
_due process proceedings allowing relief._

[illegible] and [illegible] in [illegible]
to the [illegible]
[illegible] not
[illegible] from [illegible]
[illegible] to [illegible]
[illegible]
[illegible]
[illegible] and [illegible] the law!

**Inmate's signature:** [signature]

***Proposed Solution to issue:*** [illegible]
[illegible]
[illegible]
[illegible]
[illegible]
[illegible] not know the laws of the [illegible]

********************FOR OFFICIAL USE ONLY DO NOT WRITE BELOW THIS LINE***************

**Date Received:** 12-2-21 **Interim response to inmate:** ______

**Answer provided to inmate:** 12-2-21

______ **Investigated By:** ______

______ **Referred to:** ______

______ **Rejected (include rationale for rejection in response section)**

______ **No Action required (include reason in response section)**

/ **This is not a Grievance**

**GRIEVANCE SUMMARY RESPONSE AREA:**

G21-0775

multiple complaints on a single form

# Exhibit E2

**Responding Staff Member:** [signature] **Date Answered:** 12-2-21

## INMATE REQUEST FOR INFORMATION
### Do not use this form for Property Releases, Grievances, Complaints or Sick Call

| Name: Bays Olivia | | | S.O. ID # 2131506 | Date: 12-3-21 | Cell: B18 |
|---|---|---|---|---|---|

*Circle one (1) section only or request will be voided*

| Shift Commander | Commissary | Classification | (Other) Housing | Admin | DA |
|---|---|---|---|---|---|

**Request:**

I was ordered to be released on 12-2-21 by Judge Hughes out of a superior court in Indiana. At this time you are unlawfully detaining me & have continued to violate my civil & constitutional rights. I Demand that you release me per the judicial orders immediately. I will be taking civil action

**Response:** when we get written confirmation you will be released

# Exhibit F

c's Signature (Sign at the Time of Request

| Information Provided By: | Olivia Bays |
|---|---|
| Section: B-18 Jail | Date: 12-3-21 |

GCADC FORM 1600.04 08/06

---

## USPS TRACKING # :
### 9405 5036 9930 0632 6662 91

| Trans. #: | 597475714 | Priority Mail® Postage: | $9.65 |
|---|---|---|---|
| Print Date: | 12/04/2023 | Total: | $9.65 |
| Ship Date: | 12/04/2023 | | |
| Expected Delivery Date: | 12/07/2023 | | |

**From:** OLIVIA BAYS
6161 EL CAJON BLVD # 805
SAN DIEGO CA 92115-3922

**To:** US DISTRICT CLERKS OFFICE
262 W NUEVA STE 1400
SAN ANTONIO TX 78207-4531

# Exhibit G

\* Retail Pricing Priority Mail rates apply. There is no fee for USPS Tracking® service
on Priority Mail service with use of this electronic rate shipping label. Refunds for

# Exhibit H



[illegible]

Inmate's signature: [signature] [illegible]

[illegible] Allison Collins 03340-04

Proposed Solution to issue: [illegible]

******************FOR OFFICIAL USE ONLY DO NOT WRITE BELOW THIS LINE*************

Date Received: 11-29-21 Interim response to inmate: ________

Answer provided to inmate: 11-29-21

______ Investigated By: ________

______ Referred to: ________

______ Rejected (include rationale for rejection in response section,

______ No Action required (include reason in response section)

✓ This is not a Grievance

GRIEVANCE SUMMARY RESPONSE AREA:

G21-0764

TCJS does not require a [illegible] GCADC to have male and female trustys. Cannot grieve on behalf of others.

# Exhibit I

Bays
LILI EL Cajon Blvd 305

San Diego , CA 92115

CERTIFIED MAIL

9589 0710 5270 1705 8712 20

Retail

78207

RDC 99

U.S. POSTAGE PAID
FCM LG ENV
WASHINGTON, NC
JUN 20, 2024

$7.47

S2324D500498-01

RECEIVED

JUN 2 4 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

U.S. MARSHALS
RECEIVED
JUN 2 8 2024
SAN ANTONIO, TX
ENFORCEMENT SECTION

US. District Co
western District
San Antonio

Attn : Clerks Office

262 W Nueva St suite 3-260

San Antonio , TX 78207

(1-9